476 So.2d 1354 (1985)
STATE of Florida, Appellant,
v.
Michael A. RILEY, Appellee.
No. 84-2818.
District Court of Appeal of Florida, Second District.
October 16, 1985.
Jim Smith, Atty. Gen., Tallahassee, and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellant.
Marc H. Salton, New Port Richey, for appellee.
GRIMES, Acting Chief Judge.
This appeal passes on the validity of a seizure of marijuana under a search warrant obtained as a result of aerial surveillance.
On appellant's motion to suppress, the trial court entered a comprehensive order which reads as follows:
ORDER
THIS MATTER coming on to be heard on the 14th day of December, 1984, upon the Defendant's Motion to Suppress, and the Court being duly advised in the premises, the Court finds that the testimony and photographic evidence introduced in this case establish the following:
The Defendant, MICHAEL RILEY, rented and occupied a parcel of property containing in excess of five (5) acres. A portion of this property contained a mobile home, occupied by the Defendant as a dwelling, and certain out-buildings. The property is located in a rural area and contained numerous trees and shrubs. The portion of the property containing the mobile home and out-buildings was enclosed or partially enclosed by a net wire fence. One of the photographs of the property depicts a "DO NOT ENTER" sign posted in an area in front of the mobile home.
The major out-building is located about 10' to 20' to the rear of the mobile home. This building is enclosed on two sides. One of the remaining sides is open to an area of trees and shrubbery (within the fenced area) which obscure it from view, and the fourth side is screened by the mobile home and by one or more trees located between the greenhouse and the mobile home. The roof of the greenhouse is constructed of corrugated roofing, a portion of which is translucent and a portion of which is opaque. There are two openings in the roof which appear to be caused by either removing or not installing two of the corrugated roofing panels. The combined open space amounts to approximately one-tenth of the total roof area. The testimony before the Court indicates that the contents of this greenhouse were not visible from any adjacent property.
Deputy Kurt Gell of the Pasco County Sheriff's Office, acting upon information which had been received by another deputy, investigated the property for possible violation of statutes prohibiting cultivation of cannabis. The deputy and a *1355 pilot employed by the Pasco County Sheriff's Office approached the property by helicopter at an altitude of approximately 400 feet. As the helicopter approached the property, Deputy Gell, using a camera with a telephoto lens, took photographs of the mobile home and greenhouse. The evidence is unclear as to whether the helicopter descended below 400 feet, but it did circle over the greenhouse twice while the deputy observed the property. Deputy Gell testified that through the openings in the roof and through one or more of the open sides of the greenhouse, he could see and identify growing marijuana plants. At this point the deputy left the subject property and prepared an affidavit which was the basis for the issuance of a search warrant.
On August 16, 1984, pursuant to the execution of the search warrant, the evidence sought to be suppressed by the Defendant was seized. Said evidence included 44 marijuana plants found growing in the greenhouse.
Based on these facts, the Court holds:
That the Defendant exhibited an actual and reasonable expectation of privacy in an area which is protected by the Fourth Amendment and the Declaration of Rights. Clearly, the greenhouse is within the curtilage and is therefore a constitutionally protected area. In addition, the roof or covering over the area in which the plants were located is a clear indicium of a desire for privacy from observation from the air. The structure, having two open sides, affords its contents scant protection from inclement weather and serves no purpose other than to obstruct the view of its contents. Likewise, the purpose of the opening in the roof was not to allow a viewing of the contents but was to admit sunlight (compare the plastic sheets in Huffer v. State, 344 So.2d 1332 [Fla. 2d DCA 1977]) and possibly permit circulation of air.
The Court notes that this case is distinguishable from the cases of Diehl v. State, 9 FLW 2505 [461 So.2d 157], 1 DCA, Fla., 12/3/84, Brennan v. State, 417 So.2d 1024, (Fla. 2nd DCA 1982) and Murphy v. State, 413 So.2d 1268, (1 DCA, Fla. 1982), all of which involved aerial viewings of open fields. The Court further notes that this case is distinguishable from Randall v. State, 9 FLW 2354 [458 So.2d 822], November 16, 1984, in that the Defendant herein has manifested a reasonable expectation of privacy from aerial surveillance.
The Court does not reach the question of whether circling over the subject property at an altitude of 400 feet or less is in itself an invasion of a constitutionally protected area. It is therefore
ORDERED AND ADJUDGED that the Defendant's Motion to Suppress is granted, and the evidence seized pursuant to the execution of the search warrant is hereby suppressed.
DONE AND ORDERED in Chambers, at New Port Richey, Florida, this 19th day of December, 1984.
 /s/ W. Lowell Bray, Jr.
 W. Lowell Bray, Jr.
 Circuit Judge
Though not noted in his order, the trial judge, at the hearing, specifically accepted as true the deputy's statement that he could see the marijuana plants from his position of aerial surveillance.
On appeal, the state argues that this case must be reversed on the authority of Randall v. State, 458 So.2d 822 (Fla.2d DCA 1984). We agree.
In order to fully appreciate the Randall decision, it is first necessary to discuss the case of State v. Rickard, 420 So.2d 303 (Fla. 1982). In Rickard, the police had seized marijuana from the defendant's back yard after having observed the contraband from an orange grove behind the defendant's property. Because the defendant had taken steps to block the view of his back yard from his only adjacent neighbor, the supreme court held that the defendant had exhibited a reasonable expectation of privacy in that area and quashed the warrantless seizure. However, the supreme court *1356 specifically held that the officer's initial observation of the marijuana from the orange grove qualified as a legally permissible preintrusion open view rather than a search. The seizure of the marijuana was not quashed because of the officer's conduct in viewing the defendant's back yard from the nearby grove but because of his failure either to obtain a search warrant authorizing the seizure or to demonstrate an exception to the warrant requirement.
In Randall, the police received a tip that the defendant was growing marijuana behind his house, but the plants could not be observed from the ground because the back yard was surrounded by a reed fence. However, the police were able to identify the marijuana from the vantage point of a helicopter flying at a routine patrol altitude. After analyzing Rickard, the court concluded that the appellant had exhibited a reasonable expectation of privacy from view not only from the ground but also from the air despite the lack of any shielding from aerial observation. Notwithstanding, the court concluded that the aerial surveillance made by the police from a place where they had a legal right to be did not constitute a governmental intrusion which rose to the level of an impermissible search. Thus, the police were entitled to use the information obtained from the aerial view as the basis for probable cause to obtain a search warrant. The court concluded:
While the efforts undertaken by police officers in order to gain a view into a constitutionally protected area undoubtedly must be considered in determining the degree of governmental intrusion, we do not deem aerial observation alone to be unreasonably intrusive under the circumstances presented. Society appears willing to accept aerial surveillance as a reasonable and necessary investigative tool in effective modern law enforcement. Furthermore, we do not believe that requiring police to procure a warrant before executing a general aerial overflight such as that conducted in the instant case would significantly advance the protection of legitimate privacy interests. See Oliver v. United States, 466 U.S. 170, [180], 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (addressing, peripherally, aerial surveillance of an open field). In short, we conclude that the non-harassing surveillance conducted in the instant case struck an acceptable balance between society's interest in effective modern law enforcement and the individual's interest in the values protected by the fourth amendment.
458 So.2d at 825-826.
The instant case differs from Randall only in the fact that the appellant had erected a roof over most of his greenhouse. Consequently, this provided a basis for the judge to conclude that appellant had demonstrated a reasonable expectation of privacy from aerial surveillance. However, the Randall case was decided on the same principle because the court acknowledged that by having fenced his property from ground observation, it was unnecessary for the defendant to construct an "opaque bubble" over his back yard in order to manifest a reasonable expectation of privacy, even from aerial surveillance. Therefore, appellant's effort to cover his greenhouse from aerial observation becomes an irrelevant distinction from Randall.
Recognizing that its interpretation was one of first impression in Florida, the Randall court certified a question to the supreme court. Since the parties did not further pursue the case, there is no supreme court authority on the subject. Hence, we certify the following question to the supreme court as one of great public importance:
WHETHER POLICE OFFICERS, RESPONDING TO AN ANONYMOUS TIP, MAY MAKE A LEGALLY PERMISSIBLE PREINTRUSION OPEN VIEW FROM THE VANTAGE POINT OF A HELICOPTER TRAVELING AT 400 FEET ABOVE A BACK YARD AREA IN WHICH AN INDIVIDUAL HAS MANIFESTED A REASONABLE EXPECTATION OF PRIVACY FROM GROUND AND AIR SURVEILLANCE, AND ON THE BASIS OF SUCH AERIAL *1357 OBSERVATION OBTAIN A SEARCH WARRANT JUSTIFYING THE SEIZURE OF SIGHTED CONTRABAND?
REVERSED.
FRANK and HALL, JJ., concur.